**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

SANTOIN RUSSELL,

      Plaintiff,

v.

C/O M. HEMPEN, C/O AKINS, C/O
JOHN DOE, C/O R. RAMSEY, C/O
CAMPBELL, WARDEN ANTHONY
WILLS, and LATOYA HUGHES,

      Defendants.

Case No. 26-cv-187-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Santoin Russell, an inmate of the Illinois Department of Corrections currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Russell alleges that Defendants retaliated against him by confiscating various personal items and medical devices.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

**The Complaint**

In late March or early April 2024, Correctional Officer ("C/O") M. Hempen shook down Russell's cell in North 2 and confiscated his television, fan, rescue inhaler, hearing aids, CL 20 headphones, big face ADA watch, pager watch, clothing items including all of Russell's pants, and over 350 personal pictures (Doc. 1, p. 7). Russell alleges that C/O Akins helped confiscate the items and then inventoried and packed the property (*Id*. at p. 10). At some point that day, although Russell fails to indicate whether it was during the shakedown or at a different point in the day, Akins mentioned that they were tired of Russell writing grievances (*Id*. at p. 11). Russell alleges that the shakedown was in response to his numerous grievances against medical staff and prison officials.

Russell alleges that he was issued a disciplinary report but fails to indicate the nature of the offenses (*Id*. at p. 8). The charges were later dropped. As a result of losing all of his pants, Russell had to resort to walking to the showers in a sheet (*Id*. at p. 7). He did not receive his pants back until April 19, 2024 (*Id*. at p. 8). He never received the option to destroy or send the confiscated items home (*Id*. at pp. 8, 11). Russell did submit a form to fix his television but never received a response (*Id*. at p. 8). He wrote to Anthony Wills and filed grievances, but his property was never returned (*Id*.). Russell alleges that he is considered seriously mentally ill and the confiscation of his property caused emotional distress, leading to suicidal thoughts and placement on suicide watch (*Id*.). Russell alleges that Hempen and Akins were also aware of his asthma. He also alleges that his hearing and visual impairments were well documented. But the officers still confiscated his rescue inhaler and all of his ADA assistive devices (Doc. 1, pp. 11-12).

In either late February or early March 2025, C/O John Doe approached the cells of each inmate in North 2, 3 Gallery asking if they wanted $75 for their tablets or the opportunity to send their tablets home (Doc. 1, p. 12). Russell alleges that he had over 600 songs on his tablet as well as messages from family and pictures (*Id.*). He paid for the songs and his family paid to send the messages and pictures (*Id.*). Due to the number of items on his tablet, he informed John Doe that he wanted to send his tablet home (*Id.* at p. 13). Russell notes that many of the other inmates chose the money offer (*Id.*). C/O John Doe told Russell to take the money and that nobody would care if he wrote a grievance because they didn't care about the other grievances (*Id.*). When Russell insisted that he wanted his tablet sent home, John Doe directed him to sign a form. After signing, John Doe warned Russell that he might not get anything (*Id.*).

After not hearing any update after a month, Russell wrote a grievance (Doc. 1, p. 13). In response, Russell learned that officials believed that Russell both refused the money and refused to send his tablet home (*Id.*). Russell blames C/O John Doe for informing officials that Russell refused the offered options, alleging that John Doe's conduct was an act of retaliation for Russell's grievances regarding medical staff and officers (*Id.* at p. 13). As a result, Russell lost over 600 songs that he had previously paid for as well as the $75 offered in exchange for the tablet (*Id.* at p. 14).

In August 2025, while on suicide watch, C/O R. Ramsey confiscated Russell's rescue inhaler, front cuff permit, and clothing items (Doc. 1, p. 14). Per institutional rules, the inhaler was supposed to be left in the window of Russell's cell for emergency use (*Id.* at p. 15). His prison ID and front cuff permits were also to be placed in his cell window

3

(*Id*. at p. 16). The other items were to be placed in a designated box for Russell's cell (*Id*. at p. 15). Russell alleges that Ramsey should have known this procedure as he was the normal five-day officer for the gallery (*Id*.). Russell alleges that Ramsey failed to follow these policies as an act of retaliation (*Id*.). As a result, Russell suffered with suicidal thoughts, headaches due to harassment, lack of sleep, and depression (*Id*.).

Russell notes that his front cuff permit is due to an injury to his rotator cuff and Ramsey is aware of the permits because he has cuffed Russell in the past (Doc. 1, p. 16). His prison ID is necessary for attending call passes, commissary, yard, visitation, and other appointments in the prison (*Id*.). Russell alleges that Ramsey confiscated the items in order to punish him (*Id*.). Russell faced excessive risk to his health without access to his inhaler (*Id*.).

On August 6, 2025, Russell had a call pass to the healthcare unit for chronic pain caused by nerve damage that was previously diagnosed by a doctor (Doc. 1, p. 17). Russell was let out of his cell to go to the front door of the West Cellhouse where C/O Campbell was the unit's five-day officer (*Id*.). Russell alleges that Campbell was aware of his prior complaints that Ramsey retaliated against him by confiscating his ID (*Id*.). Campbell was also aware that Russell suffered from, and was receiving treatment for, extreme, chronic pain (*Id*.). Upon reaching the cellhouse door, Campbell asked to see Russell's ID despite knowing that it had been confiscated (*Id*. at pp. 17-18). Russell asked to be escorted to obtain a new ID and informed Campbell that he was in pain and needed to attend his appointment (*Id*.). Campbell instead directed him back to his cell (*Id*.).

Campbell mockingly stated "better luck next time" as Russell returned to his cell (*Id.*). He also informed Russell that this is what happens when you file grievances (*Id.* at p. 19).

Russell alleges that Warden Anthony Wills and Director Latoya Hughes were made aware of the retaliation and deliberate indifference to his medical needs through the numerous grievances that he wrote on the incidents (Doc. 1, pp. 20-21). He alleges that he asked Wills and Hughes to stop turning a blind eye to their officers' retaliatory actions (*Id.*). He further alleges that they should have known about their officers' behavior and corrected the conduct (*Id.*).

### Preliminary Dismissals

Russell alleges that several defendants violated his rights under the Fourteenth Amendment when they confiscated his personal property and failed to provide him with due process. But an individual cannot maintain a due process claim if the state provides an adequate post-deprivation remedy. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984) (where the state provides an adequate remedy, plaintiff has no civil rights claim). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy for loss of property in an action for damages in the Illinois Court of Claims. *Murdock,* 193 F.3d at 513; *Turley v. Rednour*, 729 F.3d 645, 653 (7th Cir. 2013) (recognizing that the "Court of Claims has consistently awarded prisoners "back pay" when they were denied their stipend during unlawful confinement in segregation."). Accordingly, Russell's due process claim shall be **DISMISSED**.

Russell also alleges that Defendants violated his equal protection rights under the Fourteenth Amendment. He alleges that he wasn't given the same option as others to destroy or send his confiscated items home (Doc. 1, p. 11). He also alleges that he was not afforded the same choice of either accepting a payment for his tablet or sending it home (*Id*. at p. 12).

"The Equal Protection Clause of the Fourteenth Amendment most typically reaches state action that treats a person poorly because of the person's race or other suspect classification." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010); *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000) ("In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest."). To state a claim under the Equal Protection Clause, an inmate must show "that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005).

Here, Russell only alleges in conclusory fashion that he was not afforded the same opportunity to send his personal property home while others were allowed the option. He does not allege that members of an unprotected class were treated differently. In fact, he acknowledges that most people were allowed to make a decision regarding their tablets; nothing suggests that he was treated differently because of his race. Russell also alleges in conclusory fashion that C/O Campbell harasses, discriminates, and retaliates against African American individuals, but he fails to allege that Campbell treated him

6

differently because of race and that others who were not African American were treated differently (*Id*. at p. 18). His conclusory statements are not enough to state a claim.

Russell also alleges that Warden Wills and Latoya Hughes are liable because they failed to rectify their employees' actions. But these officials cannot be liable for the actions of their staff because the doctrine of *respondeat superior* (or supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Nor can they be liable for denying his grievances and failing to provide him with the relief he requested. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Russell alleges that he directed Wills and Hughes in his grievances to stop turning a blind eye to the problems he faced, but there are no allegations suggesting what exact issues the officials were made aware of through Russell's grievances or that they turned a blind eye to his issues. Thus, any claim against Wills and Hughes shall be **DISMISSED**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** First Amendment retaliation claim against Hempen and Akins for conducting a shakedown of Russell's cell and confiscating numerous personal items in retaliation for Russell writing grievances.

**Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Hempen and Akins for confiscating and preventing Russell from accessing his rescue inhaler and ADA assistive devices.

**Count 3:** First Amendment retaliation claim against C/O John Doe for failing to send Russell's tablet to his home and instead

reporting that Russell refused to cooperate with the offer to receive payment for his tablet or send it home.

Count 4:    **First Amendment retaliation claim against C/O Ramsey for confiscating Russell's inhaler, front cuff permit, and prison ID in retaliation for Russell filing grievances.**

Count 5:    **Eighth Amendment deliberate indifference to medical needs claim against C/O Ramsey for confiscating Russell's rescue inhaler and front cuff permit.**

Count 6:    **First Amendment retaliation claim against C/O Campbell for refusing Russell's request to obtain a new prison ID in retaliation for Russell filing grievances.**

Count 7:    **Eighth Amendment deliberate indifference to medical needs claim against C/O Campbell for refusing Russell access to the healthcare unit for his chronic pain.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard.**[1]

*Counts 1 and 2*

At this stage, Russell states viable claims for retaliation and deliberate indifference to his medical needs against Hempen and Akins. He alleges that the two officers confiscated his personal items and assistive devices in retaliation for writing grievances against numerous officials. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (In order

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

to state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation."). He also alleges that despite needing the assistive devices and access to his rescue inhaler, both defendants refused to return the items. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition."). Thus, Counts 1 and 2 shall proceed against Hempen and Akins.

*Count 3*

Russell also states a viable retaliation claim against Officer John Doe. He alleges that John Doe denied him the opportunity to send his tablet home, despite initially offering the option between sending the tablet home or receiving cash for the tablet. Russell also alleges that John Doe made a comment about writing grievances, which may suggest that the officer was acting in retaliation for Russell's frequent grievance writing against officials. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) ("A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'") (citation omitted). Thus, Count 3 shall proceed against Officer John Doe.

*Counts 4 and 5*

Russell also states viable retaliation and deliberate indifference claims against Officer Ramsey for confiscating his inhaler, front cuff permit, and prison ID while on suicide watch. Thus, Counts 4 and 5 shall proceed against Officer Ramsey.

*Counts 6 and 7*

Russell also states claims for retaliation and deliberate indifference against Officer Campbell. Russell alleges that Campbell knew about his prior complaints against Ramsey and, in response, refused to let him obtain a new prison ID or attend the healthcare unit for pain management. Campbell allegedly informed Russell that his decision was because Russell filed numerous grievances. Campbell also knew about Russell's chronic pain and refused him access to the healthcare unit. Thus, Counts 6 and 7 shall proceed against Campbell.

## Preliminary Injunction Motion

Russell recently filed a motion for preliminary injunction (Doc. 10). Russell repeats his allegations that Hempen confiscated his inhaler and assistive devices and that Officer Ramsey later confiscated his inhaler while he was on suicide watch. Russell seeks an injunction compelling officials at Menard to refrain from confiscating his medical devices (*Id*. at p. 2).

In order to obtain a preliminary injunction, a plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first

hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Further, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

Although Russell alleges that he is currently without his rescue inhaler, he fails to allege who took his inhaler and when it was confiscated from him. He notes that Hempen confiscated his inhaler initially, but his Complaint clearly indicates that this occurred in either March or April 2024 (Doc. 1, p. 7). He also received the inhaler back at some point because he later alleges that Officer Ramsey again confiscated his inhaler in August 2025 (*Id.* at p. 14). But nothing in either his Complaint or his motion indicates when he currently lost access to his inhaler and whether any of the defendants participated in the confiscation. His motion seems to indicate that this is a new incident, involving individuals who are not a party to this lawsuit. Because there are no allegations to suggest that any of the defendants participated in the current confiscation of his devices, his request for injunctive relief is **DENIED**. But to the extent his request for relief in his Complaint seeks injunctive relief, the Court **ADDS** current warden of Menard, Matthew Plummer in his official capacity only, to implement any injunctive relief awarded.

## Disposition

For the reasons stated above, Counts 1 and 2 shall proceed against Hempen and Akins. Count 3 shall proceed against Officer John Doe. Counts 4 and 5 shall proceed against Officer Ramsey, and Counts 6 and 7 shall proceed against Officer Campbell. To help identify the John Doe officer, the Court **ADDS** current warden of Menard, Matthew Plummer, in his official capacity only to respond to discovery aimed at identifying the unknown officer. Plummer shall also remain in the case to the extent Russell seeks injunctive relief. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Officer M. Hempen, Officer Akins, Officer R. Ramsey, Officer Campbell, and Matthew Plummer (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Russell. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Russell, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Russell's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Russell, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Russell is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  April 24, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

13

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**